Note.—Reported in 204 N. W. 905. See, Headnote (1), American Key-Numbered Digest, Constitutional Law, Key-No. 48, 12 C. J. Sec. 221; (2) Statutes, Key-No. 107(11), 36 Cyc. 1022, 1036; (3) Statutes, Key-No. 125(1), 36 Cyc. 1029, 1033; (4) Statutes, Key-No. 125(5), 36 Cyc. 1025, 1042: (5) Statutes, Key-No. 148, 36 Cyc. 1037.

---

CITY OF SIOUX FALLS, Respondent, v. MARSHALL, Appellant.

(204 N. W. 999.)

(File No. 6002. Opinion filed July 14, 1925.)

1. **Bail—Appeal and Error—Criminal Law—Appellate Court Judge Should Not Consider in First Instance Application for Bail Pending Appeal, Except in Case of Disqualification.**

Bail after conviction pending appeal may, under Rev. Code 1919, Sec. 5039, be granted in proper case by trial judge or judge of Supreme Court, but application in first instance should be made to trial judge, and judge of Supreme Court should not consider such an application in the first instance, except in case of absence or disqualification of trial judge or his inability or refusal to act.

2. **Bail—Appeal and Error—Judge of Supreme Court Will Not Grant Bail Pending Appeal, Unless Trial Court Has Abused its Discretion in Refusing Bail.**

Refusal of trial court to grant bail after conviction pending appeal will have great weight with Judges of Supreme Court, and bail will not thereafter be granted by them upon the same state of facts, unless it clearly appears that the trial judge has abused his discretion.

3.   Bail—Appeal and Error—Consideration by Supreme Court Judge of Application for Bail After Conviction Pending Appeal.

Where, pending appeal from conviction for possession of intoxicating liquors for sale, trial judge refused bail pursuant to his custom not to grant a stay in any criminal case, judge of Supreme Court will consider application as though made in first instance because of absence or inability of trial judge to act, and free from any presumptions or restrictions.

4.   Criminal Law—Appeal and Error—Absolute Right to Bail in Criminal Cases Held Not Applicable After Conviction.

By virtue of Const. Art. 6, § 8, and since abrogation of capital punishment, bail before conviction is matter of absolute right in all cases, but not after conviction.

5.   Words and Phrases—"Judicial Discretion" Defined.

"Judicial discretion" is not an arbitrary power, but a judicial one, governed and directed by known and established rules, and consists of a discretion to do in any particular case what the ends of justice demand.

6.   Bail—Statutes—Statute Granting Bail When in the Opinion of the Judge the Ends of Justice Demand Held Not to Add Stringency to Former Rules.

Rev. Code 1919, Sec 5039, granting bail after conviction pending appeal "only when, in the opinion of the judge, the ends of justice demand," held to establish no more stringent rule than prevailed under Rev. Code 1919, Sec. 4597, granting bail in such cases "as a matter of discretion."

7.   Bail—Appeal and Error—Matters to be Considered on Application for Bail After Conviction Pending Appeal Stated.

Application for bail pending appeal should not be granted, unless appeal was taken in good faith and there is reasonable cause therefor, but court should also consider whether defendant will be present to abide his punishment if conviction be affirmed, the enormity of the offense, the severity of the sentence, and the character and reputation of defendant as indicating the probability of his appearance at the proper time, and probable conduct while at liberty on bail.

8.   Bail—Intoxicating Liquors—Bail After Conviction Denied to Confirmed Violator of Liquor Laws.

After conviction for possession of intoxicating liquors for

sale, bail will be denied despite probable cause for appeal and good faith, in taking it where record raises no doubt of defendant's actual guilt, and he is a confirmed violator of the liquor laws, without lawful business or occupation.

Appeal from Municipal Court of Sioux Falls; Hon. Ransom L. Gibbs, Judge.

Vern Marshall was convicted of unlawful possession of intoxicating liquors for sale, and he appeals. On application to be admitted to bail. Denied.

N. B. Bartlett, of Sioux Falls, for Appellant.

Roy D. Burns, of Sioux Falls, for Respondent city.

CAMPBELL, J. The applicant was convicted in municipal court in Sioux Falls of a misdemeanor, to wit, violation of a city ordinance prohibiting the possession of intoxicating liquor for sale, trade, barter, or gift. He was sentenced on June 19, 1925, to serve six months in the county jail, and pay a fine of $500. After such conviction and sentence defendant immediately perfected an appeal, which is now pending in this court. Applicant sought to be admitted to bail by the trial judge, and was refused, and he now seeks to be admitted to bail by one of the judges of this court, and at the direction and request of the presiding judge of this court his application has been made to me. The application was first made here ex parte, and, being unwilling to pass upon the matter without giving the city an opportunity to be heard, an order was entered denying the application pro forma with leave to renew upon the same filings upon five days' notice to the city attorney of the city of Sioux Falls. The application was so renewed upon notice to the city attorney, who has appeared and filed a showing in opposition, and the matter is now for disposal upon the merits.

[1] Bail after conviction pending appeal may be granted in a proper case by the trial judge or any judge of this court. Section 5039, Code 1919. The cases, however, are uniform in holding that the application in the first instance should be made to the trial judge, both upon principles of comity and also because he is in a superior position to possess full information as to all relevant matters in each particular instance. A judge of this court should not consider such an application in the first instance except in case

·of the absence or disqualification of the trial judge, or his inability or refusal to act.

[2] The application having been addressed in the first instance to the discretion of the trial judge, and having been refused by him, the decisions are also uniform that the action of the trial judge will have great weight with the judges of the Supreme Court, and they will not thereafter grant bail upon the same state of facts, unless it clearly appears that the trial judge has abused his discretion. That rule has been frequently declared by the judges of this court. State v. Molseed, 46 S. D. 57, 190 N. W. 554; State v. Rosander, 46 S. D. 516, 194 N. W. 837; State v. Cooley, 46 S. D. 518, 194 N. W. 838; State v. Peifer, 47 S. D. 226, 197 N. W. 203.

This doctrine as expressed in these cases is sound. The cases, however, presuppose an actual exercise of discretion by the trial judge with reference to each application in the light of the particular facts and circumstances of that application.

[3] In the instant case it appears from the showing of the applicant, which does not seem in this particular to be controverted by the city, that, when the application was before the trial judge, he stated that he had been on the bench for over two years, and had never granted a stay of commitment or permitted bail to be given pending appeal in a criminal case, and that "as long as God gives me breath I will never grant a stay in these cases." I have considerable misgivings whether these words do not indicate the establishment of an arbitrary rule for all cases rather than the result of the application of sound judicial discretion to the case at bar. The maximum sentence that can be imposed in the court in question is six months in jail and a fine of $500. In the congested condition of the calendar in this court it is highly probable that an appeal from conviction of a criminal offense in that court ,even where a maximum sentence had been imposed, could not be reached and disposed of here before the serving of the sentence had been practically completed. Certainly that would likely be the case where the sentence was appreciably less than the maximum. The resulting injustice and hardship in the event of a reversal readily appears. To hold that a judge of this court should be precluded from acting in the matter by the ruling of the trial judge under the circumstances indicated by the record here would

come very near to holding, as a practical matter, that the judge
of the court in question had the power, in contravention of the
statutes and Constitution of this state, arbitrarily to declare and
successfully to maintain that no appeal from conviction in that
court should be of any substantial value to the appellant. It would
almost appear in the light of the statements made by the trial
judge that, in substance, he refused to consider the particular
application upon its merits. In that event the doctrine of the
South Dakota cases above cited has no application. I deem it my
duty, therefore, to consider this application in like manner as
though made here in the first instance by reason of the absence of
the trial judge or his inability to act, and free from any presump-
tions or restrictions that would have arisen had the record affir-
matively indicated that the trial judge in fact had applied his ju-
dicial discretion to the merits of the particular case.

It becomes necessary, therefore, to consider somewhat of the
nature of bail and the principles which should govern the granting
or refusal thereof in the first instance in such cases as may be
discretionary.

[4] By virtue of our constitutional provision (article 6, § 8),
and since the abolition of capital punishment, bail before convic-
tion is a matter of absolute right in all cases. This constitutional
guaranty, however, does not apply to bail after conviction. That
is the rule laid down by a judge of this court (State v. Molseed,
supra), and seems to be the uniform holding in other states hav-
ing the same or similar constitutional provisions. See Ex parte
Voll, 41 Cal. 29; State v. McFarlin, 41 Nev. 105, 167 P. 1011;
Re Schirber, 19 Idaho 531, 114 P. 29, 37 L. R. A. (N. S.) 693;
Ex parte Dyson, 25 Miss. 356; Ex parte Heath, 227 Mo. 393, 126
S. W. 1031; State v. Ward, 9 N. C. (2 Hawks) 443; Re Boulter,
5 Wyo. 263, 39 P. 875; Ex parte Ezell, 40 Tex. 451, 19 Am.
Rep. 32.

The matter of bail after conviction in this state is governed
by statute. The first Territorial Legislature of Dakota passed a
law relating thereto (Laws Dakota Territory 1862, p. 209), and
the territorial Code Commission of 1877 (section 554, Code Crim.
Proc. 1877) adopted almost verbatim the provision of the Cali-
fornia statute of 1850 (Statutes Cal. 1850, p. 315), which had

been re-enacted as section 1272, California Penal Code 1872, as follows:

"After conviction of an offense not punishable with death, a defendant who sues out a writ of error for the revision of a judgment may be admitted to bail:

"1. As a matter of right when the writ of error is from a judgment imposing a fine only.

"2. As a matter of discretion in all other cases."

This section was re-enacted without change as section 7606, Compiled Laws of Dakota 1887, and as section 587, Rev. Code of Criminal Procedure 1903. The wording was very slightly changed by the Code Commission of 1919, and the law now appears as section 4597, Rev. Code 1919, as follows:

"After conviction in any case other than for a capital offense, where the defendant appeals from the judgment, bail by sufficient sureties is allowable:

"1. As a matter of right when the judgment imposes a fine only.

"2. As a matter of discretion in all other cases."

Our statutes contained no other provision regarding bail pending appeal until the enactment of chapter 120, Laws of 1907, which abolished the then existing method of review in criminal cases by writ of error and substituted review by appeal, and provided procedure therefor, and by section 6 provided as follows:

"The judge of the trial court, or any justice of the Supreme Court, shall, on such appeal being perfected, admit the defendant to bail in such sum as he shall by order deem proper, in all bailable cases."

This section was re-enacted verbatim as section 6, chapter 146, Laws 1915, and by chapter 200, Laws 1917, was amended to read as it now appears in section 5039, Rev. Code 1919, as follows:

"After conviction of an offense a defendant who appeals from the judgment may be admitted to bail, by the trial judge or any judge of the Supreme Court, in such sum as such judge deems proper in the following cases:

"1. As a matter of right when the appeal is from a judgment imposing a fine only.

"2. In other cases only when, in the opinion of the trial judge or any judge of the Supreme Court to whom application is

made, the ends of justice demand that such defendant be admitted to bail; provided, that in any case where a defendant has been admitted to) bail upon such appeal, the judge may, if convinced that such appeal is not being prosecuted in good faith and with due diligence, cancel the order admitting such defendant to bail and remand him to proper custody."

[5, 6] A necessary preliminary question is whether chapter 200, Laws 1917 (now section 5039, R. C. 1919), established any more stringent rule as to admission to bail after conviction than had previously existed under the statute which has now become section 4597, R. C. 1919. I think that it did not, though there is perhaps some slight intimation to the contrary in State v. Molseed, supra. When the method of reviewing a criminal case was changed by chapter 120, Laws 1907, either inadvertently or otherwise, the matter of bail pending appeal was made mandatory "in all bailable cases." I believe that the purpose of chapter 200, Laws 1917, now section 5039, Rev. Code 1919, was to do away with that mandatory feature and restore the law in this regard to the condition existing prior to chapter 120, Laws 1907, under section 4597, Rev. Code 1919. In other words, granting bail "as a matter of discretion" as provided by section 4597 Rev. Code, and granting bail "only when in the opinion of the judge * * * the ends of justice demand," as provided in section 5039, Rev. Code, are as a legal matter one and the same thing. The doing of justice is positive, not negative. In any given case the ends of justice demand either that bail be granted or that bail be refused, and that is the identical thing that should govern the discretion of the judge as specified in section 4597. Judicial discretion is not an arbitrary power, but a judicial one, governed and directed by known and established rules. It is nothing more nor less than a discretion to do in any particular case what the ends of justice demand.

"It is, indeed, in the discretion of the court to bail a person so circumstanced. But discretion, when applied to a court of justice, means sound discretion guided by law. It must be governed by rule, not by humor; it must not be arbitrary, vague, and fanciful; but legal and regular." Lord Mansfield in Rex v. Wilkes (1770), 4 Burr. 2527, 98 English Reports, Reprint, 327.

"Discretion * * * is to a very great extent, regulated by

usage or by principles, which courts have learned by experience will, when applied to the great majority of cases, best promote the ends of justice." State v. Hultz, 106 Mo. 41, 16 S. W. 940.

" * * * By justice we mean that end which ought to be reached in a case by the regular administration of the principles of law involved as applied to the facts. * * * " Meeks v. Carter, 5 Ga. App. 421, 63 S. E. 517.

"The 'discretion' spoken of in the authorities is a legal discretion; a discretion to be exercised in discerning the course prescribed by the law, according to principles ascertained by adjudged cases. 'Judicial power, as contradistinguished from the power of the law, has no existence,' it was said by Chief Justice Marshall, in Osborn v. Bank of United States, 9 Wheat. 738 [862], 6 L. ed. 204, 234. Courts are the mere instruments of the law, and can will nothing. Judicial power is not exercised for the purpose of giving effect to the will of the judge, but always for the purpose of giving effect to the will of the law." Vickers v. Carey Co., 49 Okl. 231, 151 P. 1023, L. R. A. 1916C, 1155

I have no hesitancy, therefore, in saying that the doing of an act according to the dictates of a sound judicial discretion, and the doing of an act only when the ends of justice demand, amount in substance to synonymous phrases, and it follows therefore that chapter 200, Laws 1917, now section 5039, Code 1919, added no stringency to the rules or principles which should govern the exercise of discretion under section 4597, Code 1919, upon an application for bail.

On any original application for bail, therefore, the question is as to what principles should govern the discretion of the judge, or in other words, "what do the ends of justice demand?"

The theory upon which the practice of admitting to bail developed is that the detention of the prisoner is merely for safe custody in order to insure his appearance, first, to answer to the charge against him at trial, or later to abide the punishment imposed, if his conviction be affirmed, and that meantime he is delivered or bailed to his sureties upon their giving sufficient security for his appearance, "he, being supposed to continue in their friendly custody, instead of going to jail." 4 Blackstone, p. 297.

At the English common law bail after conviction was granted infrequently and with great hesitation, particularly in cases of fel-

ony, and very rarely in the absence of some special affirmative ground therefor in the particular case. Many of the reasons influencing that situation have no application to the present day. For example, communication and identification were slow and difficult, extradition was unknown, and, if a prisoner escaped beyond the realm, he was practically beyond the reach of justice. It should be noted also that the term "felony" at the common law embraced only those crimes which occasioned a total forfeiture of land or goods or both in addition to capital or other punishment. Also the idea of bail at the common law developed in the first instance solely with reference to bail before conviction, and originated several centuries before there was any right of appeal or review in a criminal case, and, when the idea of review in a criminal case as a matter of right began gradually to develop in the law, the judges, approached it with caution, and were extremely conservative in extending to that new development the already long-established and well-grounded doctrine of bail as it applied to the case before conviction. Bail at the common law rested, first, exclusively in the discretion of the judges, but was regulated by statute as early as Westminster 1, 3 Edw. I, ch. 15, in 1275, whereas the granting of a writ of error in a criminal case until an extremely late period of the common law was entirely in the discretion of the crown. It was conceived of as merely a modification of the royal power to pardon, and was purely ex gratia. This situation as to review of a criminal case continued until after 1700, and seems first to have been presented to the court of the Queens Bench, and a judicial opinion passed thereon in the third year of Queen Anne (1705) in Reg. v. Patty, 2 Salk, 502 (91 Reprint 431), where it is stated:

"And now a new question was started and referred to the judges, whether the queen ought to allow a writ of error in this or any other case ex debito justitiae, or ex mero gratia? And ten of the judges were of opinion that the queen could not deny the writ of error; but it was grantable ex debito justitiae, except only in treason or felony. Vide 2 Lev., Thurston's case. Price and Smith held, that the subject could not of right demand them in any criminal case. * * *"

Also at the time the idea of bail was developing at common law the King and his judges had much less regard for the life and liberty of the subject than we have today for the life and

liberty of the citizen. By statute (9 Henry I [1109]) theft in value above 12 pence was punishable by death, in most instances without benefit of clergy. Theft in value under 12 pence was punishable by whipping and imprisonment and by subsequent statute (4 George I, c. 11 [1718]) that punishment might be extended to transportation beyond the seas for seven years. See 4 Blackstone, c. 17, p. 238.

In California, the state from which our statute was adopted, we find the court going in a short period of years from a liberal view to an extremely strict view through the course of three decisions by the same judge. The first decision is by Wallace, J., in November, 1871, in the case of Ex parte Hoge, 48 Cal. 3. The prisoner was convicted of assault with intent to do bodily harm; the punishment being fine or imprisonment, or both. The sentence was 18 months in state's prison, and the prisoner was admitted to bail. The case points out that, if the fine alone had been imposed, the positive rule of the statute would have admitted the prisoner to bail, and yet his offense was identical, whether his sentence be fine or imprisonment, and the court says:

"I think that should I, under the circumstances, refuse to admit the prisoner to bail, it would be a misapplication of the discretion conferred by the statute. The right to appeal to the Supreme Court is guaranteed by the Constitution to the prisoner, and is as sacred as the right of trial by jury. It is one of the means the law has provided to determine the question of his guilt or innocence. Upon such an appeal, the ultimate question is nearly always as to the validity of the judgment under which the prisoner is to suffer; and it is certainly not consonant to our ideas of justice, if it can be prevented by legal means, that even while the question of guilt or innocence is yet being agitated in the form of an appeal, the prisoner should be undergoing the very punishment and suffering the very infamy which it was the lawful purpose of the appeal to avert. It would be somewhat akin to a practice of punishing the accused for his alleged offense while the jury was yet deliberating upon the verdict."

The next California decision is by the same judge, and turns entirely on the proposition that constitutional guaranty does not extend to bail after conviction, and expressly excludes any question of discretion as follows:

"If we are to consider this application as made to our discretion under the statute, the petition is insufficient, in that it sets forth no fact or circumstance whatever upon which it would be possible for us to exercise an intelligent discretion in determining the application." Ex parte Voll, 41 Cal. 29.

Following these two decisions came the California Code of 1872, which, while it did not change the laws as to granting bail, did introduce a new provision for staying the execution of a judgment pending appeal. See section 1243, Cal. Pen. Code 1872. In the next case of application for bail in 1875 the opinion is by the same judge, Wallace, then become Chief Justice, and refers to the former cases regarding the matter of bail, says:

"But an important alteration of the law in this respect has been lately wrought by the Penal Code, which must operate in a great measure to change the practice heretofore prevailing."

The opinion then quotes the section of the statute providing for stay of execution and proceeds:

"As the proceedings in execution of the sentence, in a criminal case may now be stayed pending an appeal, without the necessity of admitting the prisoner to bail, it is apparent that the ends of justice no longer require applications of this character to be viewed with the degree of liberality formerly prevailing. Courts are no longer compelled to choose between remitting a prisoner to punishment before final conviction upon the one hand, and setting him at large upon bail pending his appeal upon the other. The prisoner is sufficiently protected pending the appeal by the certificate of probable cause ,and the interests of public justice better secured by his detention to abide the judgment of the appellate court upon the case,   *   *   *

"I think that upon the true construction of the statute (in view of the provision which authorizes a stay of proceedings pending an appeal in a criminal case upon certificate of probable cause), bail upon appeal should not be allowed, except by a judge authorized to grant a certificate, and then only in cases where circumstances of an extraordinary character have intervened." Ex parte Marks, 49 Cal. 680.

Assuming a prisoner convicted and sentenced to 12 months in the county jail, a stay of execution granted, and bail refused, Mr. Justice Wallace does not discuss just how much consolation

the prisoner in the county jail might derive from the fact that he was not serving a sentence in the county jail, but was merely there detained pending the appeal. In any event, Ex parte Marks is the foundation of the strict rule prevailing in California supported by a long line of decisions; the latest enunciation thereof which has come to my notice being People v. Eiseman (1924), 230 P. 669. In this connection it should be observed that the Legislature of California has apparently taken cognizance of the strictness of the rule adopted by the courts, and the hardship worked thereby, particularly in cases of misdemeanor and minor offenses, and the California statute was amended in 1909 (Stat. and Amd'ts, Cal. [1909], p. 591) to grant bail as a matter of right in misdemeanor cases, so that a defendant in California is now entitled to bail as a matter of right upon appealing from a judgment of a fine only in all cases, and upon appeal from a judgment imposing imprisonment in all cases of misdemeanor.

I do not believe the judges of this state should be governed by so strict a rule as that of the early English common law or of the California cases. No hard and fast rules can be determined, applicable alike to every case, but I think certain guiding principles may be established. Fundamental justice is an abstraction, but the administering of justice in any given case is always a relative matter as to the various parties involved, and their respective rights, privileges, and immunities. Justice to the individual requires that he should enjoy the rights guaranteed him by the Constitution to "life, liberty and the pursuit of happiness." but, when the individual has committed a crime, justice to society requires that he should suffer punishment, and his individual right to liberty and the pursuit of happiness is at least temporarily overridden, as a matter of justice, by the rightful demands of the law for the continued peace and safety of the community and all organized society. Under our law a defendant has a statutory, though not constitutional, right of appeal in a criminal case. It is not, therefore, compatible with our ideas of justice, in general, that he should be detained or confined or deprived of his liberty prior to the final adjudication of his case if he has any substantial grounds for appeal.

"Unless there is good reason for refusing bail ,a defendant sentenced to imprisonment ought not to be compelled to submit to

imprisonment while he is prosecuting an appeal in good faith." State v. Waterman (1922), 36 Idaho 259, 210 P. 208.

Yet this consideration may be overridden in a particular case by the best interests of society, or of the community arising upon one or more of divers possible considerations.

[7] The ends of justice do not require that a defendant be admitted to bail pending an idle or frivolous appeal, and the first showing to be made by an applicant for bail pending appeal is that his appeal is taken in good faith and that there is probable cause therefor. This is well defined by the Supreme Court of Idaho in a recent case:

"It was held in Re Neil, 12 Idaho 749, 87 P. 881, that the phrase 'probable cause for the appeal,' as used in C. S. § 9074, does not mean that there is probable reason to suppose that the judgment will be reversed, but only that appellant has assigned grounds on which he expects to rely that are open to doubt or honest difference of opinion, about which rational, reasonable, and honest discussion may arise; that the appeal must present some debatable question, and is not merely frivolous and vexatious. * * * " Ex parte France (1924), 38 Idaho 627, 224 P. 433.

Reasonable ground or probable cause for the appeal, however, is far from being the sole consideration that should influence the judge in the matter of granting bail, and the mere existence of such reasonable ground or probable cause, although it should in every case be a prerequisite, does not of itself authorize bail.

"In misdemeanor cases, as well as in felony cases, when an appeal is taken, the fact that reasonable grounds of appeal exist would have weight with the court in determining the application for bail; but the fact alone that reasonable grounds of appeal appear to the judge to exist in a misdemeanor case, and the fact alone that a certificate of reasonable grounds for the appeal had been granted in a felony case, is not 'so far conclusive of the question of bail as to prevent the court from considering every circumstance which would fairly and reasonably control or affect its discretion.'" In re Welisch (1917), 18 Ariz. 517, 163 P. 264.

Another consideration of prime importance is whether under all the circumstances of the case, if bail be granted, the defendant will be present to abide his punishment if his conviction is affirmed. This is to be considered, not only in fixing the amount of bail,

but in determining whether bail should be granted at all, and this particular consideration varies directly with the enormity of the offense and the severity of the sentence, as has been recognized from the earliest days, not only in regard to bail pending appeal, but in regard to bail before conviction.

" * * * Bail is ousted or taken away, wherever the offense is of a very enormous nature; for then the public is entitled to demand nothing less than the highest security that can be given, viz., the body of the accused; in order to insure that justice shall be done upon him if guilty. Such persons, therefore, * * * have no other sureties but the four walls of the prison." 4 Blackstone, c. 3, p. 298.

A further question of some importance arises, namely, whether when considering an application for bail the judge is entitled to consider matters beyond the record of the particular case wherein the application is made. I believe this question must be answered in the affirmative. I think the court is also entitled to, and should, consider, in so far as it is made to appear, the general record, character, and reputation of the defendant as indicating, not only the probability of his appearance at the proper time, but also what is likely to be his course of conduct during the period of his liberty on bail. Granting the inherent constitutional right of the citizen to liberty, and granting the general principle that incarceration prior to final conviction is not consonant with our ideas of justice when there is probable cause for appeal, nevertheless a particular defendant may have so conducted himself as to have forfeited the benefit in his particular case of the application of those principles which ordinarily would be sufficient in themselves to justify the granting of bail to one who previously had been of good conduct and reputation. The matter of bail in these cases is not a matter of strict legal right, but of legal favor, to be granted or denied, as justice, both to the defendant and to society, may demand. Organized society has a right to be reasonably assured that, if bail is granted, the defendant will not only be forthcoming to abide his punishment if convicted, but will properly conduct himself in the meantime. The form of recognizance upon bail of the common law and under the early English statutes was "for his appearance to take his trial and to be of good behavior in the meantime." Quen v. Badger, 4 Q. B. 467, 114 Eng. Rep., Re-

print, 975. Under the early English statutes regulating the matter of bail before conviction persons "of good fame," charged with misdemeanors and certain felonies, were admitted to bail as of right, while the admission to bail upon identical charges of persons accused, "not being of good fame," or who "labored under want of reputation," was in the discretion of the judges. See 4 Blackstone, p. 299.

"Petitioner contends that the court, in considering whether a defendant, is entitled to bail, is precluded from considering anything dehors the record in the particular court and case in which he has been convicted, and moves to strike from the amended return all matter relating to his conviction for other offenses. * * *

"C. S.. §§ 9041 and 9046, give to the trial judge in certain instances authority to suspend the execution of judgment, or to withhold passing judgment, upon such terms and for such time as he may prescribe. Manifestly, this and other humane provisions now generally recognized are not intended to apply to habitual criminals, or to a class of persons who indicate by their persistency in the commission of crime that nothing short of actual restraint will deter them from committing other offenses.

"It would appear from the supplemental matters set up in the amended return to the writ that the petitioner has committed other offenses in the way of issuing checks upon banks where he had no funds or credit to protect the same, and had been given jail sentences and money fines for so doing. It may well be that the learned trial judge who refused to admit him to bail after conviction upon the present charge of issuing a fictitious check had knowledge of, and took into account, the commission of these other offenses. He would have been warranted in so doing, for there is no legal impediment against a trial judge, when application is made by a defendant to be admitted to bail after his conviction for a felony, considering extrinsic matters which tend to show that the defendant has been a habitual offender, and if admitted to bail will continue in a criminal course of conduct, although such matters would not under the rules of evidence be admissible in a trial of his cause before a jury.

"It is the duty of courts in the administration of criminal law to endeavor to protect society against the habitual offender. While this must be done with due regard for the settled principles

of the law, none of the fundamental rights of a person who has been convicted of a felony are violated by refusing him bail pending an appeal to this court, if his record is such that it may be reasonably anticipated that he will continue a career of crime until he is actually incarcerated in prison. With this class of offenders, their incarceration is for their benefit, as well as that of society. In considering the right of one to be admitted to bail after conviction on a felony charge, we think courts may consider the record of the offender in the commission of other offenses in determining whether or not he should be admitted to bail pending his appeal from such judgment of conviction." In re France, 38 Idaho 627, 224 P. 433.

Many other facts and circumstances will arise in particular cases which should have the consideration of the judge in passing upon the question of admitting to bail, but I think the foregoing sets out the guiding principles which should influence the sound judicial discretion in passing upon the facts of a particular case, or, in other words, which should determine whether in the particular case the ends of justice demand admission to bail.

[8] Applying the principles above set out to the facts of the instant case, I am of the opinion that the defendant has probable cause for appeal, and that the appeal is taken in good faith. He raises substantial questions of law, and it is possible that as a matter of law there is prejudicial error in the record which might require a reversal. So far as the facts are concerned, however, I am satisfied from the record that there is no doubt of the actual guilt of the defendant of the offense charged. It also appears that in September, 1922, the defendant forfeited a $200 cash bond upon a charge of selling intoxicating liquor; that he was three times arrested and convicted in federal court on a charge of selling intoxicating liquor; and that from October, 1924, to the latter part of December of that year he was serving a jail sentence for the same offense upon a plea of guilty. According to the defendant's own testimony he has no established home or place of business or occupation in the city of Sioux Falls. In reply to a question as to what he had been doing for a living "during the last year" (the trial being in June, 1925), he stated that he had been working at common labor. On further cross-examination it appears that in April, May, and June, 1924, he was in California; whether

working or not he fails to state. He says that from July 15 to October 10, 1924, he "worked over across the river in Iowa." At what or for whom he does not say. From October, 1924, until Christmas he was in jail in Sioux Falls on the charge above referred to. From his release from jail until his arrest on May 18, 1925, he did no work, but hung about the rooms where he was arrested, except that he appears to have been in Arkansas from the middle of April until shortly before his arrest. It appears from the defendant's own testimony that he has no established, lawful business or legitimate gainful occupation which he pursues with any degree of regularity, and that for the past two years, at least, he has been an habitual and confirmed violator of the liquor laws.

I am far from convinced that, if admitted to bail, the defendant would appear to abide his punishment if his conviction should be affirmed, and I am still further from being convinced that he would be of "good behavior," or conduct himself as a law-abiding citizen in the meantime. Under all the circumstances of this particular case, weighing the inherent rights of the defendant upon the one hand and the rights and interests of the community upon the other, I doubt if this defendant should be the recipient of any favors at the hands of the law. I do not believe that the ends of justice demand, or that a sound judicial discretion dictates, that the defendant in this case should be admitted to bail pending his appeal.

I think the application should be denied, and it will be so ordered.

Note.—Reported in 204 N. W. 999. See, Headnote (1), American Key-Numbered Digest, a Bil, Key-No. 47, 6 C. J. Secs. 187, 204; (2) Bail, Key-No. 49, 6 C. J. Sec. 204; (3) Bail, Key-No. 49, 6. C. J. Sec. 204; (4) Criminal Law, Key- No. 42, 6 C. J. Secs. 168, 185; (5) Words and Phrases, Discretion, 18 C. J. Sec. 3; (6) Bail, Key-No. 44, 6 C. J. Sec. 187; (7) Bail, Key-No. 49, 6 C. J. Sec. 187; (8) Bail, Key-No. 44, 6 C. J. Sec. 187.

On right to release on bail pending appeal under a general statute, see note in 37 L. R. A. (N. S.) 693; 3 R. C. L. 16; 4 R. C. L. Supp. 165.

On right to give bail in capital case see note in 39 L. R. A. (N. S.) 752.

On right to give bail in civil action or proceeding, see note in 15 A. L. R. 1079.